**Daniel ST. J. ENRIQUEZ, Plaintiff,**

v.

**TRANSIT MIXED CONCRETE COMPANY, Defendant.**

**No. CV 74–1755–AAH.**

United States District Court,
C. D. California.

June 26, 1980.

Alvin S. Tobias, Manhattan Beach, Cal., for plaintiff.

Iverson, Yoakum, Papiano & Hatch, Los Angeles, Cal., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HAUK, District Judge.

This cause came on regularly for trial on June 9, 1980, Honorable A. Andrew Hauk, judge presiding. The Court being fully advised, now makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. This is an action in which the issues are raised by plaintiff's Second Amended Complaint (complaint) and the Amended Answer (answer) of defendant thereto for injunctive and other relief against alleged racial discrimination in employment. Federal jurisdiction and venue are involved under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, et seq.). The Court has jurisdiction and plaintiff's action was timely filed.

2. Plaintiff is a Mexican-American citizen of the United States.

3. Plaintiff was employed by defendant as a mixer-driver of a truck transporting ready-mix concrete produced by defendant from January 9, 1969 to and including August 29, 1969 at defendant's plants at the times herein indicated:

(a) From January 9 to March 31, 1969 at defendant's Los Angeles plant.

(b) From about April 1 to May 9, 1969 at defendant's Long Beach plant.

(c) From about May 10 to about June 13, 1969 at defendant's Hollywood plant.

(d) From about June 15, 1969 to August 29, 1969 at defendant's Irwindale plant.

Prior to his employment by defendant plaintiff had never had a job driving a ready-mix truck.

4. From the commencement of his employment plaintiff was hired as an extra (relief) driver and such status existed for 60 days thereafter. Plaintiff was told when hired that he would be an extra driver. All new drivers are employed as extra drivers.

5. Plaintiff's transfer from Los Angeles to Long Beach resulted from the fact that plaintiff bid to drive an available truck which was at the Long Beach plant. He was awarded this job in accordance with the union contract (Art. X, sec. 4). His transfer to the Long Beach plant was in no manner motivated by his race, ancestry or any other proscribed reason.

6. Plaintiff's transfer to defendant's Hollywood plant was made because of: (1) difficulties plaintiff had with customers while at the Long Beach yard; and (2) during the time he worked at the Long Beach plant there were a great many occasions on which he was late for work. His transfer to the Hollywood plant was in no manner motivated by his race, ancestry or any other proscribed reason.

7. Plaintiff worked at the Hollywood plant until about May 19, 1969, at which time he suffered an industrial injury and did not return to work until about June 15, 1969. At this time plaintiff was transferred to defendant's Irwindale plant where he worked until he was terminated on August 26, 1969 for just cause. The transfer from the Hollywood plant to the Irwindale plant was in no manner motivated by his race, ancestry or any other proscribed reason.

8. The principal reasons for plaintiff's termination on August 29, 1969 were:

(a) Inability to get along well with customers.

(b) Frequent absences from work.

(c) Frequent tardiness in reporting to duty requiring at times the rescheduling of deliveries of ready-mix concrete to customers.

(d) Unwillingness to start a delivery after about noon.

9. Plaintiff's discharge was based on legitimate, substantial and justified business considerations and was in no manner motivated by his race, ancestry or any other proscribed reason.

10. On September 3, 1969 plaintiff filed a timely charge with the Equal Employment Opportunity Commission (EEOC) against defendant which charge on September 24, 1969 was referred by the EEOC to the California Fair Employment Practice Commission (FEPC).

11. On November 5, 1969 the FEPC declined jurisdiction over plaintiff's case and referred the complaint back to the EEOC which informed defendant of and served defendant with the charge on June 2, 1971.

12. Plaintiff received from the EEOC a "Right to Sue Letter" in accordance with the provisions of Title VII of the Civil Rights Act of 1964, as amended; said letter was dated March 22, 1974.

13. There has been no discrimination by defendant or any of its supervisory personnel against plaintiff because of his race, ancestry or for any other proscribed reason.

14. During the term of plaintiff's employment as a ready-mix truck driver some of defendant's other ready-mix truck drivers annoyed, harassed or vexed plaintiff because of his Mexican-American race. At no time did plaintiff or anyone on his behalf ever inform any managerial or supervisory personnel of defendant that any of his co-workers were discriminating, harassing, vexing or annoying him because of his Mexican-American race.

15. Plaintiff was not a regular driver between January 6 and January 25, 1969. He was an extra driver during such period. No person with less seniority than plaintiff was hired as a regular driver during such period. Any work loss suffered by plaintiff during said period was because of his status as an extra, and this was consistent with the union contract and company policy and had nothing to do with the plaintiff's origin or race. At the time plaintiff was assigned a truck in January, he knew that he would have to relinquish it when the person whose seniority entitled him to the truck returned from an operation.

16. Plaintiff was not given erroneous instructions as to how to reach a jobsite because of his Mexican-American origin.

17. Before completing his work defendant advised its drivers (including plaintiff) of the time each driver was to arrive on the following day for work. It was important to defendant that the drivers arrive for loading of their trucks at the time indicated so that they could comply with the time schedule for the load to be delivered to the customer. If one driver were late, it would interfere with the scheduling of other drivers and keep them waiting for the first driver to load.

18. Plaintiff made no complaint about being transferred from the Los Angeles plant to the Long Beach plant. The Long Beach plant was much closer to plaintiff's home than the Los Angeles plant.

19. Plaintiff was not falsely accused of driving over freshly poured concrete or talking back to a contractor. It is true that he had driven over some freshly poured (green) concrete. This incident was reported to defendant by the customer and the fact was verified by the defendant.

20. No written reprimand was ever put into plaintiff's personnel file by defendant without believing in good faith that the same was justified and on no occasion were such reprimands included in his file because of his race or national origin.

21. Several of the contractors (customers) to whom plaintiff made deliveries while working at the Long Beach plant complained of his attitude and refusal to comply with their requests. Plaintiff argued with the contractor or his employees when they made requests concerning the quantity of water desired by the contractor to be mixed with the concrete.

22. Although plaintiff knew it was important to the defendant that its drivers maintain good relations with their customers, plaintiff by his own admission was not successful in doing that with certain of the customers.

23. Plaintiff had no seniority at the Long Beach plant. It was normal procedure that the driver with the least seniority would get the least desirable assignment. No driving assignments were made to plaintiff because of his race or national origin.

24. None of defendant's supervisory or managerial personnel gave any erroneous directions to plaintiff as to the location of jobsites while we was working at the Hollywood plant. If any erroneous instructions were given to him by anyone, they were not done in order or discriminate against him because of his race or national origin. At all times while working at the Hollywood plant plaintiff had a map book which he could have consulted to locate the address of jobsites to which he was delivering concrete.

25. Plaintiff was not unjustly accused of failing to wash out the drum of his truck. On the occasion of the delivery of some colored concrete plaintiff after making such delivery and reloading his truck failed to wash it out and the contractor to whose job the concrete was delivered complained of this fact. No criticism by defendant of plaintiff for this incident was prompted by a motive or desire to discriminate against him because of his race or national origin.

26. None of the actions which plaintiff alleges constitute discrimination against him by defendant because of his race or national origin are true. There was no unlawful discrimination against the plaintiff by the defendant at any time during plaintiff's employment or at the termination of his employment by defendant.

27. Plaintiff's action is not barred by laches or by any applicable statute of limitations.

28. Any Conclusions of Law set forth in these Findings of Fact are by this reference incorporated in the Conclusions of Law.

## CONCLUSIONS OF LAW

1. Plaintiff's complaint was filed within the time permitted by Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e–5(f)(1)).

2. Plaintiff's complaint is not barred by laches or the statute of limitations.

3. Defendant is entitled to a judgment that plaintiff take nothing by his complaint, that the complaint and action be dismissed and that defendant recover its costs.

4. Any Findings of Fact included in these Conclusions of Law are by this reference incorporated in the Findings of Fact.

LET JUDGMENT BE ENTERED ACCORDINGLY.